# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
#### 5:22 CV 00486

| | |
|---|---|
| KESHA L. KNIGHT,<br><br>      Plaintiff,<br><br>   v.<br><br>THE CITY OF RALEIGH; D.W.<br>DEACH, individually; John and Jane<br>Doe Officers 1-10, individually,<br><br>    Defendants. | **COMPLAINT** |

Plaintiff Kesha L. Knight alleges as follows:

## INTRODUCTION

1.      Plaintiff, who is disabled because of a stroke, was alone in her home on February 12, 2020, when heavily armed police officers busted down her door with a battering ram, pointed assault weapons in her face, and held her at gunpoint. This home invasion was based on false information. The deliberate decision to invade her home without giving her a reasonable opportunity to answer the door was not authorized by a search warrant or justified by exigent circumstances, in violation of her rights under the Fourth Amendment to the United States Constitution, Article I, section 20 of the North Carolina Constitution and her rights under North Carolina law. Plaintiff was traumatized and terrorized by this home invasion and unreasonable and excessive use of force. She has suffered serious psychological injury because of the unlawful and unreasonable search of her home and excessive

and unreasonable use of force. She seeks remedies for this violation of her rights under 42 U.S.C. §1983 and North Carolina law.

## JURISDICTION AND VENUE

2.      Ms. Knight brings this civil action under 42 U.S.C. § 1983 for acts committed by Defendants under color of state law that deprived Ms. Knight of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

3.      This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) over Ms. Knight's federal claims.

4.      This Court has pendent jurisdiction under 28 U.S.C. § 1367 over Knight's state law claims.

5.      All material events giving rise to this cause of action occurred in Wake County, North Carolina.

6.      Plaintiff resides in Wake County, North Carolina.

7.      On information and belief, all Defendants reside in Wake County, North Carolina.

8.      Under 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of North Carolina, Western Division.

## PARTIES

9.     Plaintiff Kesha L. Knight is a citizen and resident of Wake County, North Carolina.

10.     Defendant City of Raleigh (the "City") is a municipal corporation organized by charter under Chapter 160A of the North Carolina General Statutes. It established and maintains the Raleigh Police Department ("RPD").

11.     Defendant D.W. Deach, on information and belief, is a citizen and resident of Wake County.  In February 2020, he had been law enforcement officer with the Raleigh Police Department for more than thirteen years and was assigned to the Field Operations Flex Team in the North District.  He is sued in his individual capacity.

12.     On information and belief, Defendants John and Jane Doe, RPD Officers 1-10, were law enforcement officers employed by the City.  In February 2020 these RPD police officers were assigned to the Field Operations Flex Team or the Selective Enforcement Unit ("SEU"), or both.  These RPD police officers led and participated in the invasion of Ms. Knight's home without giving her an opportunity to answer the door.  One or more of these officers seized and detained her by pointing assault rifle(s) at Ms. Knight.  These RPD police officers are sued in their individual capacities for claims.

## JURY DEMAND

13.     Ms. Knight respectfully demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## FACTS

14.     Ms. Knight is 43 years old.  She is disabled as a result of a stroke she suffered in 2011.  After a prolonged and difficult recovery, she suffered additional strokes in 2017.  In February 2020 she had right side weakness and struggled to walk, requiring a cane or walker.

14.     Ms. Knight has no criminal record.

15.     In February 2020 Ms. Knight did not own a firearm.  Prior to February 12, 2020, she had never registered a firearm, had a permit for a firearm, or sought a permit for a firearm.

16.     In February 2020, Ms. Knight resided in an apartment at 3810 102 Grey Harbor Drive.  She lived alone.

17.     In February 2020, Ms. Knight did not have a romantic partner.

18.     In February 2020 Ms. Knight had no male visitors in her apartment, except, perhaps, her father.

19.     Ms. Knight resided in the same apartment from December 2015 through February 12, 2020.  During that period of time, the only male visitor to her apartment was her father.

20.     In February 2020, Ms. Knight had no overnight guests in her apartment.

21.     On February 12, 2020, at approximately 6:28 P.M.:

a)      Ms. Knight was at home, sitting at her kitchen table, talking to her mother on the phone;

b)      She had recently gotten out of the shower and was partially dressed, wearing only a bra and pajama pants;

c)      RPD officers busted through the door to her apartment with a battering ram and stormed into her apartment armed with assault rifles.

24.     The officers knocked and announced their presence at the same time they knocked down her door and burst into her home.

25.     The officers gave Ms. Knight no opportunity to come to the door or respond to their announcement.

26.     No exigent circumstances supported the decision to ignore their legal and constitutional obligation to knock and announce their presence and allow Ms. Knight an opportunity to respond prior to their forced entry.

27.     No search warrant authorized their decision to ignore their legal and constitutional obligation to knock and announce their presence and allow Ms. Knight an opportunity to respond prior to their forced entry.

28. The officers had a search warrant for Ms. Knight's apartment that was based conclusory allegations.

29. The conclusory allegations were false in all material respects.

30. A reasonable law enforcement officer would or should have known that the allegations relied upon in the application for a search warrant were false.

31. A reasonable law enforcement officer would or should have known that the conclusory allegations in the search warrant were made with deliberate indifference or reckless disregard for the truth.

32. Upon entering the apartment, one or more RPD officers pointed an assault weapon in Ms. Knight's face.

33. One or more RPD officers held her at gunpoint while other officers conducted a search.

34. At all times Ms. Knight's hands were in full view of the officers.

35. Ms. Knight was not armed.

36. The officers ordered Ms. Knight to place her hands on her head, which she did with difficulty because of her disability.

37. Ms. Knight struggled to keep her hands on her head because of her disability. When she faltered, an officer grabbed one of her hands and forced it to her head. Ms. Knight feared that she would be killed because of her difficulty keeping her hands on her head.

38. A reasonable law enforcement would or should have known that Ms. Knight presented no risk of harm to anyone.

39. The officers found no evidence of any illegal activity.

40. The officers found no evidence that anyone other than Ms. Knight stayed in the apartment.

41. There was no firearm in the apartment.

42. The officers continued to hold her at gunpoint after a reasonable officer would have realized that the search warrant was based on false information.

43. The officers continued to search her apartment after a reasonable officer would have realized that the search warrant was based on false information. Ms. Knight was terrorized and traumatized by the storming of her apartment and being held at point of assault rifle.

44. Ms. Knight was so terrified that she lost control of her bowels and bladder and suffered humiliation because she urinated and defecated on herself, while she was not fully dressed and surrounded by numerous police officers.

45. Ms. Knight was so traumatized that the officers called EMS.

46. Ms. Knight was taken to WakeMed, where she was seen at approximately 8:57 P.M. for anxiety and chest pains.

47. She was diagnosed at WakeMed with a panic attack, hypertension and sinus tachycardia. She was given Lorazepam. She was discharged in a wheelchair.

48. The next day she was admitted to Holly Hill Hospital. During a five-day admission there she was treated for post-traumatic stress disorder (PTSD), suicidal ideation, dissociation, inability to eat or sleep, anxiety and depression.

49. Ms. Knight received outpatient psychiatric care through Monarch NC following her release from Holly Hill.

50. Since this raid Ms. Knight has suffered fear and anxiety in her own home, especially at night. Her mother often stayed overnight with her, or Ms. Knight stayed at her mother's home so that she was not alone at night in her apartment.

51. Ms. Knight eventually left her apartment and moved in with her mother for several months before finding a new apartment.

52. Ms. Knight has been diagnosed with severe post-traumatic stress disorder.

53. Ms. Knight has suffered and continues to suffer grave and ongoing humiliation, psychological trauma, injury, and harm as a proximate cause of the invasion of her home by heavily armed RPD officers who burst through her door with a battering ram and held her gunpoint without cause or reason.

54. The RPD officers had a search warrant when they invaded Ms. Knight's home.

55.    The warrant was obtained by Officer Deach, who alleged that there was probable cause to believe that narcotics were being sold from Ms. Knight's apartment by Terrance Campbell.

56.    In his application for the warrant, Officer Deach swore:

Information was recently received from a credible and proven Raleigh Police informant that narcotics were being sold from 3810 102 Grey Harbor Drive, Raleigh, NC. The (CI) stated a subject identified as Terrence Campbell was storing and selling narcotics at this address. The CI within the last 72 hours was at this location and observed a large amount of powder cocaine, and a firearm that Campbell was in possession of after exiting this town home. Campbell is a convicted felon and cannot possess firearms. Campbell stays at this address with his girlfriend Kesha Knight. Multiple police databases list this address for Ms. Knight. This CI has proven to be a reliable source and has made several narcotics cases for the Raleigh police department over several years. Mr. Campbell is currently on probation for the sale and distribution of narcotics in North Carolina.

57.    The averments attributed to a CI are false.

58.    Ms. Knight does not know Terrence Campbell.

59.    Terrence Campbell has never been in Ms. Knight's apartment.

60.    Ms. Knight did not have a boyfriend.

61.    On information and belief, no CI told Officer Deach that Ms. Knight was Terrence Campbell's girlfriend.

62.    On information and belief, no CI told Officer Deach that narcotics were sold from 3810 102 Grey Harbor Drive.

63.    On information and belief, Officer Deach failed to disclose in his search warrant application how he obtained the information, or determined, that Terrence Campbell had a girlfriend named "Kesha Knight."

64.    On information and belief, Officer Deach failed to disclose in his search warrant application how he obtained the information, or determined, that the apartment reportedly identified or referenced by a CI was 3810 102 Grey Harbor Drive.

65.    No RPD officer, including Officer Deach, made any attempt to investigate or corroborate the conclusory information reportedly provided by a CI.

66.    No RPD officer, including Officer Deach, made any attempt to observe or surveil the apartment to see if there were any indication at all that the CI's information might possibly be true or accurate.

67.    No RPD officer, including Officer Deach, made any attempt to observe or surveil Ms. Knight's apartment to see if there was any pattern of visitation that might corroborate the information allegedly provided by a CI.

68.    No RPD officer, including Officer Deach, made any attempt to send the CI, another CI, or an undercover officer to Ms. Knight's apartment to ask for Terrence Campbell.

69.    No RPD officer, including Officer Deach, made any attempt to attempt to buy drugs from Ms. Knight's apartment.

70. No RPD officer, including Officer Deach, made any attempt to determine where Terrence Campbell actually resided, stayed or visited.

71. Ms. Knight's apartment was in the Villages East, six building, 160 unit apartment and condominium complex. Each building is the same height and nearly identical in layout. The apartments numbers are not visible from the street or walkways to the building.

72. No RPD officer, including Officer Deach, made any attempt to verify that the CI, if one exists, had correctly identified the apartment allegedly used by Terrence Campbell to store and sell drugs.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. §1983
### Search Warrant Procured By False Statements
### Defendant Deach

73. Plaintiff relies on all allegations in this complaint.

74. Defendant Deach is sued in his individual capacity.

75. Defendant Deach acted under color of state law.

76. Defendant Deach, in his supporting affidavit for a search warrant, included the following false statements:

a) "narcotics were being sold from 3810 102 Grey Harbor Drive;"

b) "Terrence Campbell was storing and selling narcotics at this address;"

c) "CI within the last 72 hours was at this location and observed a large amount of cocaine;'

d)     "Campbell stays at this address;"

e)     Campbell's girlfriend is Keisha Knight.

77.    Each statement in paragraph No. 76 is false.

78.    The statements in paragraph No. 76 were material to magistrate's finding of probable cause.

79.    The statements in paragraph No. 76 were included with reckless disregard for the truth.

80.    The statements in paragraph No. 76 were included to create the false impressions that the alleged CI:

a)     knew Keisha Knight;

b)     had personal knowledge of the relationship between Ms. Knight and Terrence Campbell;

c)     had personal knowledge that Terrance Campbell stayed in Ms. Knight apartment regularly;

d)     had personal knowledge that Terrence Campbell stored drugs in 3810 102 Grey Harbor Drive;

e)     had personal knowledge that Terrence Campbell carried a weapon on one occasion as he left Ms. Knight's apartment.

81.   On information and belief, Defendant Deach failed to disclose how he came by the information or surmised that:

a)   Terrence Campbell had a girlfriend named Keisha Knight.

b)   that a CI had described apartment number 3810 102 Grey Harbor Drive.

82.   The false statements identified in paragraph No. 80, together with the omissions identified in paragraph No. 81, create a false and misleading air of reliability.

83.   Without the false and misleading statements identified in paragraphs Nos. 80-81, there would have been inadequate basis to conclude that the CI had personal knowledge of the facts attributed to the CI in the affidavit supporting the warrant.

84.   Without the false and misleading statements identified in paragraphs Nos. 80-81, there would have been inadequate basis to conclude that there was probable cause to believe that evidence of illegal drug activity might be found in Ms. Knight's apartment.

85.   In February 2020 it was clearly established that including a) false statements, b) made with reckless disregard for the truth, c) that are necessary to a finding of probable cause in a supporting affidavit for a search warrant violates the Fourth Amendment.

86.     The search based on the warrant procured by Defendant Deach through material, false statements, made in disregard for the truth, violated Ms. Knights rights under the Fourth and Fourteenth Amendments to the United States Constitution.

87.     As a proximate result of Defendant Deach's wrongful and unconstitutional conduct, Ms. Knight was humiliated, suffered and continues to suffer emotional distress, grave and ongoing psychological trauma, injury, and harm, and incurred medical costs.

**SECOND CLAIM FOR RELIEF**
42 U.S.C. §1983
Unlawful Entry
Defendants Deach, John & Jane Doe RPD officers

88.     Plaintiff relies on all allegations in this complaint.

89.     Defendant Deach and the John and Jane Doe RPD officers are sued in their individual capacities.

90.     Defendant Deach and the John and Jane Doe RPD officers acted under color of state law.

91.     Defendant Deach and the John and Jane Doe RPD officers, individually and jointly, knocked and announced their presence at the same time they knocked down her door and burst into her home.

92.     The officers gave Ms. Knight no opportunity to come to the door or respond to their announcement.

93. No exigent circumstances supported the decision to ignore their legal and constitutional obligation to knock and announce their presence and allow Ms. Knight an opportunity to respond prior to their forced entry.

94. No search warrant authorized their decision to ignore their legal and constitutional obligation to knock and announce their presence and allow Ms. Knight an opportunity to respond prior to their forced entry.

95. The heavily armed invasion of her home, as alleged in this complaint, under all the circumstances, was unlawful and unreasonable and violated Ms. Knight's violated Ms. Knights rights under the Fourth and Fourteenth Amendments to the United States Constitution.

96. It was clearly established that the forcible entry, as alleged and under the cirumstances, without first giving Ms. Knight an opportunity to respond to the announcement, in the absence of exigent circumstances or a warrant authorizing a "No Knock" forcible entry, violated the Fourth and Fourteenth Amendments to the United States Constitution.

97. As a proximate result of Defendant Deach's wrongful and unconstitutional conduct, Ms. Knight was humiliated, incurred medical costs suffered and continues to emotional distress, grave and ongoing psychological trauma, injury, and harm.

## THIRD CLAIM FOR RELIEF
### 42 U.S.C. §1983
### Unreasonable Seizure/Excessive Force
Defendants John & Jane Doe RPD officers

98.     Plaintiff relies on all allegations in this complaint.

99.     John and Jane Doe RPD officers, acting under color of state law, used unreasonable and excessive force in knocking down her door without first giving her a reasonable opportunity to respond to their announce, in pointing assault weapons at her, and in holding her at gunpoint while the search was conducted.

100.    The unreasonable and excessive force employed by John and Jane Doe RPD officers in invading Ms. Knight's home and seizing her at point of assault rifles, Ms. Knight was humiliated, incurred medical costs, suffered and continues to suffer emotional distess, grave and ongoing psychological trauma, injury, and harm.

## FOURTH CLAIM FOR RELIEF
### 42 U.S.C. §1983
### Monell Claims (Unlawful entry & Unreasonable Force)
Defendant City of Raleigh

101.    Plaintiff relies on all allegations in this complaint.

102.    The unreasonable search and seizure alleged in this case was caused by the official policies of Defendant City.

103.    There is a pattern and practice, known to, and condoned or encouraged by, city officials and employees with final policymaking authority for the RPD and the City, of heavily armed home invasions, in the absence of exigent circumstances or authorization by warrant, without first giving occupants a reasonable opportunity to respond to police announces.

104. There is a pattern and practice, known to, and condoned or encouraged by, city officials and employees with final policymaking authority for the RPD and the City, of unreasonable and excessive use of force during heavily armed home invasions, including pointing assault rifles at law abiding citizens without justification.

105. Defendant City, through city officials and employees with final policy making authority for the RPD and the City, through training in search and seizure tactics and through failure to heed constitutional and legal standards regarding the requirement to first "knock and announce," in the absence of exigent circumstances or authorization by warrant, has shown reckless disregard of and/or deliberate indifference to the constitutional "right of the people to be secure in their persons, houses … against unreasonable searches and seizures." U.S. Const. amend IV.

106. On information and belief, Defendants John and Jane Doe Officers 1-10 were members of the RPD Field Operations Flex Team or Selective Enforcement Unit ("SEU"). The Selective Enforcement Unit is the RPD's equivalent of a SWAT team.

107. The U.S. Supreme Court has established a "reasonableness" inquiry: although the standard generally requires the police to "announce their intent to search before entering closed premises, the obligation gives way when officers have a reasonable suspicion" that it would be "dangerous or futile" to knock and announce. *United States v. Banks*, 540 U.S. 31, 36 (2003). In *Banks*, the Court held

that it was reasonable to enter a home "15 to 20 seconds" after knocking and announcing when officers suspected "imminent loss of evidence." *Id.*

108. Similarly, North Carolina law requires a law enforcement officer to give "appropriate notice of his identity and purpose" before executing a search warrant and entering a premises. N.C. Gen. Stat. § 15A-249. An officer may dispense with the requirement if they have probable cause to believe that giving notice would endanger the life or safety or any person, or if they have announced their identity and purpose and reasonably believe that admittance is being denied or unreasonably delayed or that the premises are unoccupied. N.C. Gen. Stat. § 15A-251.

109. In practice, the "appropriate notice" that is provided by RPD officers is perfunctory and unconstitutional. RPD officers routinely enter apartments while simultaneously knocking.

## The RPD SEU Unit's Pattern and Practice/ Executing Quick Knock or No-Knock Warrants

110. RPD has a general practice of executing its search warrants in a "No Knock" or "Quick Knock" manner, with a highly militarized and armed team, regardless of individualized circumstances.

111. The practice of law enforcement announcing itself and immediately entering a premises by force is known colloquially as a "Quick Knock."

112. The RPD's pattern and practice of knocking while simultaneously entering—"Quick Knock"—has effectively turned knock and announce warrants into "No Knock" executions.

113. The RPD's pattern and practice of seizing and holding home occupants, including children, at point of assault weapons, regardless of individualized circumstances or threat of arm, is unreasonable and unconstitutional.

114. Plaintiff relies on evidence, including body camera footage, that RPD SEU officers have engaged in illegal "No Knock" or "Quick Knock" raids on at least six {7?} occasions, in addition to invasion of Ms. Knight's home.

115. These raids occurred on December 11, 2019 (Blake Banks), February 28, 2020 (Gregory Washington), March 19, 2020 (Keith Green), April 7, 2021 (Amir Abboud and family), and May 21, 2020 (Yolanda Irving and family; Kenya Walton and family).

## RPD SEU Officers Raid Abboud Home

116. The below photo provides an example of this practice. The photo is a screen shot taken from video footage of the raid of Amir Abboud's home in April of 2021. As shown in the photo, RPD officers knock on the door while simultaneously using a battering ram to burst into his home.



117.    The RPD officers then point assault rifles at Mr. Abboud and his family who were standing near the doorway and easily would have been able to answer the door if the officers had given them the opportunity.

118.    The RPD officers had no "reasonable suspicion" that knocking and announcing their presence—and then allowing Mr. Abboud 15-20 seconds to answer the door—as required by United States v. Banks, 540 U.S. 31, 36 (2003), would be dangerous or futile or allow for the destruction of evidence.

119.    In fact, Mr. Abboud and his family were entirely innocent of any crime and no contraband was found during the search of their apartment.



<u>RPD SEU Officers Raid Blake Banks' Home</u>

120.    On December 11, 2019, RPD SEU officers raided the home of Blake

Banks.

121.    RPD SEU officers entered an apartment building and approached unit

243 and without knocking or announcing opened the door and entered and searched

the apartment.

122.    On information and belief, RPD officers had no "reasonable suspicion"

that knocking and announcing their presence would be dangerous or futile or allow for

the destruction of evidence.

123.    Body camera footage of this raid was provided to Plaintiff's attorneys by

RPD.

<u>RPD SEU Officers Raid Gregory Washington's Home</u>

124.    On February 28, 2020, RPD SEU officers raided Gregory Washington's

home.

125. As in the above-described SEU raids, officers simultaneously knocked while breaking down the door with a battering ram.

126. On information and belief, RPD officers had no "reasonable suspicion" that knocking and announcing their presence would be dangerous or futile or allow for the destruction of evidence.

127. Body camera footage of this raid was provided to Plaintiff's attorneys by RPD.

### RPD SEU Officers Raid a Home Keith Green is Visiting

128. On March 19, 2020, RPD SEU officers raided a home Keith Green was visiting.

129. As in the above-described SEU raids, officers simultaneously knocked while breaking down the door with a battering ram.

130. RPD Officers used a flash bang grenade during the execution of this warrant.

131. On information and belief, RPD officers had no "reasonable suspicion" that knocking and announcing their presence would be dangerous or futile or allow for the destruction of evidence.

### RPD SEU Officers Raid Yolanda Irving's Home and Kenya Walton's Home

132. On May 21, 2020, RPD SEU officers raided Yolanda Irving and her

family's home and Kenya Walton and her family's home.

133. RPD SEU officers burst into Yolanda Irving's home without knocking or announcing their intentions or cause to be at the premises.

134. The officers seized and pointed rifles at Yolanda Irving and her children without any probable cause or suspicion. Yolanda Irving and her family were innocent and none of them were the subject of the search warrant.

135. The officers continued to detain Yolanda Irving and her family even though they knew they raided the wrong home.

136. At the same time, RPD SEU officers entered Kenya Walton's address without a search warrant, consent, or probable cause to enter her home.

137. The officers seized and pointed rifles at Kenya Walton's family without any probable cause or suspicion. Kenya Walton and her family were innocent and none of them were the subject of a search warrant.

138. On information and belief, RPD officers had no "reasonable suspicion" that knocking and announcing their presence would be dangerous or futile or allow for the destruction of evidence.

139. Body camera footage of these raids was provided to Plaintiff's attorneys by RPD.

140.  The unlawful and unreasonable home invasion conducted by RPD officers at Ms. Knight's apartment fits the pattern routinely followed by RPD SEU officers and was caused by a pattern or practice of executing its search warrants in a "No Knock" or "Quick Knock" manner, with a highly militarized and armed team, regardless of individualized circumstances.

141.  The unlawful and unreasonable invasion of Ms. Knight's home on February 12, 2020 by RPD SEU officers without first giving her a reasonable opportunity to respond, in the absence of exigent circumstances or a "No Knock" warrant, was caused by the City's deliberate indifference to, or reckless disregard of, constitutional and legal standards requiring officers to first "knock and announce," in the absence of exigent circumstances or authorization by warrant.

142.  The excessive force used by RPD SEU officers, and the unreasonable seizure of Ms. Knight, during the invasion of Ms. Knight's home on February 12, 2020 was caused by reckless disregard of, and/or deliberate indifference to, the constitutional "right of the people to be secure in their persons, houses … against unreasonable searches and seizures."  U.S. Const. amend IV.

143.  As a proximate result of Defendant City's pattern or practices, policies, deliberate indifference and/or reckless disregard of legal and constitutional standards, Ms. Knight incurred medical costs, was humiliated and suffered and continues to suffer emotional distress, grave and ongoing psychological trauma, injury, and harm.

## FIFTH CLAIM FOR RELIEF
## NEGLIGENCE
### Defendants Deach,
### RPD officers John & Jane Doe,
### City of Raleigh

144.  Plaintiff relies on all allegations in this complaint.

145.  Defendant Deach is sued in his individual capacity. He has no public official immunity because he acted malicious and corruptly and with deliberate indifference to plaintiff's rights.

146.  Defendant Deach acted within the course and scope of his employment as a police officer for Defendant City in obtaining a search warrant for Ms. Knight's apartment and participating in the search.

147.  Defendant Deach was agent of Defendant City of Raleigh in obtaining a search warrant for Ms. Knight's apartment and participating in the search.

148.  Defendant City of Raleigh, as the principal for its agent and employee, Defendant Deach, is responsible under *respondeat superior* for injuries caused by his negligence within the course and scope of his employment.

149.  Defendant City of Raleigh, under N.C.G.S. § 160A-485, has waived governmental immunity for liability for injuries caused by the negligence of Defendant Deach in this matter by purchase of insurance that will indemnify the City and its agents for any judgment against it or its agents named in this matter.

150.  Defendant Deach owed a duty to Ms. Knight to investigate the information allegedly provided by a confidential informant.

151.  A reasonable investigation would have shown:

a)      no unusual pattern of visitors to Ms. Knight's apartment;

b)      Terrence Campbell did not visit Ms. Knight's apartment;

c)      Terrence Campbell did not stay overnight in Ms. Knight's apartment;

d)      the apartment number for the apartment referenced by the confidential informant, if there is a confidential informant.

e)      the apartment frequented by Terrence Campbell, if the confidential informant's information was reliable.

152.    Defendant Deach failed to conduct even a perfunctory investigation of the information allegedly provided by the confidential informant, in reckless disregard of, or deliberate indifference to, Ms. Knight's rights to the security of her home.

153.    Defendant Deach's failure to conduct a reasonable investigation proximately caused Ms. Knight humiliation, emotional distress, grave and ongoing psychological trauma, injury, and harm and caused her to incur medical costs.

154.    Defendant Deach owed Ms. Knight a duty of candor in applying for a search warrant.  Instead, he provided misleading information.  Specifically, he created the false impression that a reliable, confidential informant:

a)      knew Keisha Knight;

b)      had personal knowledge of the relationship between Ms. Knight and Terrence Campbell;

c)      had personal knowledge that Terrance Campbell stayed in Ms. Knight apartment regularly;

d)      had personal knowledge that Terrence Campbell stored drugs in 3810 102 Grey Harbor Drive;

e)      had personal knowledge that Terrance Campbell carried a weapon on one occasion as he left Ms. Knight's apartment.

155.    These false impressions proximately caused the unlawful and unreasonable search of Ms. Knight's apartment and the unlawful and reasonable seizure of her person.  In this manner, Defendant Deach's negligence proximately caused Ms. Knight grave and ongoing psychological trauma, injury, and harm.

156.    In submitting false and misleading information in his application for a search warrant Defendant Deach acted corruptly and maliciously, or in deliberate indifference to, or in reckless disregard of, Ms. Knight's right to the security and privacy of her home.

157.    Under North Carolina law, Defendants Deach and RPD officers John & Jane Doe owed statutory duties to Ms. Knight to give "appropriate notice of [their] identity and purpose" before executing the search warrant for her apartment. N.C. Gen. Stat. § 15A-249.  An officer may dispense with the requirement if they have probable cause to believe that giving notice would endanger the life or safety or any person, or if they have announced their identity and purpose and reasonably believe that admittance is being denied or unreasonably delayed or that the premises are unoccupied. N.C. G. S. § 15A-251.  There were no such exigent circumstances.

158.    Defendants Deach and RPD officers John & Jane Doe breached the foregoing statutory duties in invading Ms. Knight's home without first giving her an opportunity to respond to the required notice.

159.    Breach of these statutory duties was negligent.

160.    Defendants Deach and RPD officers John & Jane Doe acted corruptly and maliciously, and/or in deliberate indifference to, or in reckless disregard of, Ms. Knight's statutory rights, which protect the security and privacy of her home.

161.    Defendants Deach and RPD officers John & Jane Doe failure to heed the foregoing statutory duties proximately caused humiliation, emotional distress, grave and ongoing psychological trauma, injury, and harm to Ms. Knight and caused her to incur medical costs.

162.    Defendants Deach and RPD officers John & Jane Doe proximately caused her to incur medical costs and proximately caused humiliation, emotional distress, grave and ongoing psychological trauma, injury, and harm to Ms. Knight by their corrupt and malicious, deliberate indifference to, and/or reckless disregard of Ms. Knight's statutory rights to notice and an opportunity to respond prior to forcible entry.

163.    Defendants RPD Officers John and Jane Doe owed Ms. Knight a duty to use no more force than was reasonably necessary under the circumstances.

164.    Under all the circumstances, as alleged in this complaint, Defendants RPD Officers John and Jane Doe used excessive and unreasonable force in pointing

assault weapons at Ms. Knight and holding her at gunpoint while the search was being conducted.

162.    Defendants RPD Officers John and Jane Doe acted corruptly and malicious, in deliberate disregard of, and/or with deliberate indifference to, Ms. Knight's common law rights.

163.    Defendants John & Jane Doe negligent use of excessive force proximately caused humiliation, emotional distress, grave and ongoing psychological trauma, injury, and harm to Ms. Knight and caused her to incur medical costs.

164.    The negligence of Defendants Deach, John & Jane Doe, as alleged in the complaint, was committed in the course and scope of their employment as RDP officers and is imputed to Defendant City of Raleigh, which has waived governmental immunity by purchase of insurance.

## SIXTH CLAIM FOR RELIEF
### ASSAULT
Defendants RPD officer Jane and John Doe

165.    Plaintiff relies on all allegations in the complaint.

166.    Defendants RPD Officers assaulted Ms. Knight by pointing assault weapons at her and holding her at gunpoint, placing her in fear for her life.

167.    The assault was not authorized or privileged because it was not reasonable or necessary under the circumstances and/or exceeded the amount of force reasonably necessary.

168. Ms. Knight was injured as a proximate and foreseeable result of the assault. Her injuries include medical costs, humiliation, emotional distress, grave and ongoing psychological trauma, injury, and other harm to Ms. Knight, including panic attacks and post-traumatic stress disorder.

169. Defendants RPD Officers Jane and John Doe are sued in their individual and official capacities for assault.

170. Defendants RPD Officers Jane and John Doe have no public official immunity because they acted corruptly and maliciously, outside of and beyond the scope of his duties, and/or with reckless disregard or deliberate indifference to plaintiff's rights and to limits on their authority to use force.

171. The City of Raleigh is sued based on the acts of its agent and employee, Defendants RPD Officers Jane and John Doe, who were acting in the course and scope of their employment as police officers for the City of Raleigh. The acts of Defendants RPD Officers Jane and John Doe alleged in this complaint are imputed to Defendant City of Raleigh.

172. On information and belief, the City of Raleigh's governmental immunity has been waived pursuant to N.C. Gen. Stat. § 160A-485 by purchase of insurance providing indemnity or insurance coverage for liability of police officers and for liability of the City of Raleigh based on the acts of its employees and/or establishment of a funded reserve/adoption of resolution.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays to the Court for relief as follows:

1. That her claims be tried before jury;

2. Compensatory damages from Defendants, jointly and severally, in an amount to be determined at trial;

3. That the Court declare that the Defendants have violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution, and under North Carolina common and statutory law;

4. That the Court award costs and expenses, including attorneys' fees pursuant to 42 U.S.C. § 1988;

5. Costs of court and interest as allowed by law;

6. Such other and further relief as may be equitable and just.

This, the ___ day of November, 2022.

/s/ Emily D. Gladden
Emily D. Gladden
Tin Fulton Walker & Owen, PLLC
407 N. Person St.
Raleigh, NC 27601
egladden@tinfulton.com
(919) 720-4201
Fax: (919) 400-4516
N.C. Bar No. 49224


/s/ William G. Simpson, Jr.
William G. Simpson, Jr.
Tin Fulton Walker & Owen, PLLC
1526 E. Franklin St., Suite 102
Chapel Hill NC 27514
wsimpson@tinfulton.com
(919) 240-7089
Fax: (980) 217-3396
N.C. Bar No. 13706


_____
Abraham Rubert-Schewel)
Tin Fulton Walker & Owen, PLLC
119 E. Main Street
Durham, NC 27701
schewel@tinfulton.com
(919) 451-9216
N.C. Bar # 56863

Attorneys for Plaintiff

1